```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DENISE BURTOFT,                       )
                                      )
              Plaintiff,              )
                                      )
         v.                           )   Civil Action No. 04-488
                                      )
THE PRUDENTIAL INSURANCE              )
COMPANY OF AMERICA,                   )
MEDCO CONTAINMENT SERVICES, INC.,     )
MERCK-MEDCO MANAGEMENT CARE, L.L.C.,  )
                                      )
              Defendants.             )
```

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that the motion for summary judgment submitted on behalf of defendants (Docket No. 21) be granted, and that the motion for summary judgment submitted on behalf of plaintiff (Docket No. 28) be dismissed as moot.

II.  REPORT

Plaintiff, Denise Burtoft ("Burtoft"), commenced this action under the Employee Retirement Investment Security Act ("ERISA"), 29 U.S.C. § 1332(a)(1)(B), alleging that she has been denied short term disability benefits to which she is entitled under the employee welfare benefits package provided through her

employer, Medco Health Solutions, Inc. ("Medco"),[1] and administered by The Prudential Insurance Company of America ("Prudential").

The following facts appear to be undisputed. Plaintiff was employed by a subsidiary of Medco, Medco Health Solutions of North Versailles, L.L.C., as data entry technician at its North Versailles, Pennsylvania pharmacy.[2] On or about February 15, 2002, plaintiff left work for health reasons and on February 28, 2002, applied for and was granted short-term disability benefits under Medco's short-term disability program for the period of time between February 15, 2002 and March 31, 2002 ("STD Program").[3]

Prudential subsequently informed plaintiff by letter dated March 29, 2002, that it had reviewed her claim for STD benefits and that in order to evaluate her eligibility for benefits beyond March 31, 2002, it would need additional documentation regarding her treatment and condition.[4] On April 24, 2002, plaintiff received a letter from Prudential informing

---

[1] Medco has represented, and plaintiff does not dispute, that Medco Containment Services, Inc. and Merck-Medco Managed Care, L.L.C., as named in the complaint, are now a single entity known as Medco Health Solutions, Inc. As such, we will refer to these defendants collectively as "Medco."

[2] Affidavit of Andrew Gregg ("Gregg Aff."), ¶ 3 [Dkt. No. 24].

[3] Complaint ¶¶ 14-16 [Dkt. No. 1]. A copy of plaintiff's application for STD benefits is attached to the Complaint as Exhibit 2.

[4] Complaint ¶ 17. A copy of the March 29, 2002 Letter from Prudential is attached to the Complaint as Exhibit 3.

her that her STD benefits were terminated effective April 1, 2002, as the information contained in her file indicated that the level of activity required to engage in her physical therapy regimen equaled or exceeded that required for plaintiff to perform her sedentary job as a Data Technician and, thus, she was not "totally disabled" as defined under the STD Program.[5] Although plaintiff subsequently appealed that decision and submitted additional documentation from her primary care physician on several occasions, the denial of benefits was ultimately affirmed on December 23, 2003.[6]

It also appears undisputed, indeed, plaintiff has expressly admitted,[7] that Medco's STD Program is a "salary continuance program" which allows an eligible Medco employee to continue to receive all or a portion of his/her normal salary during periods of time when the employee is absent due to injury, sickness or maternity leave;[8] that the length of time off and the amount of compensation available to eligible employees under the STD Program varies depending on the employee's length of

---

[5] Complaint ¶ 18.  See Gregg Aff. ¶ 4, Exh. 1: Medco STD Program.

[6] Complaint ¶¶ 19-26.

[7] See Defendant's Statement of Undisputed Material Facts [Dkt. No. 23]; Plaintiff's Responsive Statement of Undisputed Material Facts [Dkt. No. 40].

[8] See Gregg Aff., Exh. 1, §§ 6-7; Exh. 2: Group Life and Disability Insurance Programs and the Medchoice Health Care Plan for Employees of Medco Containment Services, Inc. and its Participating Affiliates Summary Plan Description ("Summary Plan"), p. 9.

service;[9] that there is no fund from which STD benefits are paid to eligible employees but rather payments made to employees under the STD Program are entirely from Medco's general assets;[10] that the STD Program is neither funded nor insured, nor secured by any securities such as bonds;[11] and that the Summary Plan applicable to Medco's STD Program expressly states that the STD Program is not an ERISA plan.[12]  Indeed, it appears that the Summary Plan not only indicates that, "[t]he Plan is an employee welfare benefit plan (except the Short Term Disability Program which is a payroll practice) administered by the Plan Administrator," but also advises that, "the Short Term Disability Program described [in this Plan] is not an employee benefit Plan subject to the requirement[s] of ERISA."[13]  It also appears that Medco advised counsel for plaintiff in a letter dated August 1, 2003, that Medco's "short term disability program is a payroll continuation program and, as such, is not subject to [ERISA], as amended.  The program is paid out of the company's general assets."[14]

---

[9] Id.: Exh. 1, § 7, Exh. 2, p.9.

[10] Gregg Aff. ¶ 6, Exh. 1, § 1.

[11] Gregg Aff. ¶ 7.

[12] Gregg Aff., Exh. 2, pp. 2, 28.

[13] Id.

[14] Gregg Aff. ¶ 19, Exh. 4: August 1, 2003 Letter.

Plaintiff nevertheless filed the instant complaint on March 29, 2004, bringing a single count against Medco and Prudential under section 1332(a)(1)(B) of ERISA.

Medco has now filed a motion for summary judgment, in which Prudential has joined,[15] arguing that the STD program at issue is not governed by ERISA and, thus, plaintiff is unable to recover under the statute.  Plaintiff has also filed a motion for summary judgment in which she contends that, under the circumstances of this case, review of defendants' decision to terminate her disability benefits is subject to a heightened level of scrutiny and that, under such scrutiny, it is clear that her benefits were wrongly terminated in violation of ERISA and that summary judgment is properly entered in her favor.

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  <u>Celotex Corp. v.</u>

---

[15]<u>See</u> Docket No. 27.

Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* ... or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

In its motion, Medco contends that it is entitled to summary judgment because the facts of record demonstrate that the STD program at issue is not a "plan, fund, or program" regulated by ERISA but rather is a "payroll practice" that is specifically exempted from ERISA and, thus, plaintiff is unable to recover under ERISA as a matter of law.

It appears undisputed that ERISA, which contains detailed provisions regulating employee benefit plans, was passed

6

by Congress to protect employees from the mismanagement and misuse of funds accumulated to finance various types of employee benefits and the failure to pay employees benefits from those funds. Massachusetts v. Morash, 490 U.S. 107, 112-13, 115 (1989). Employee benefit plans are defined as either "employee welfare benefit plans" or "employee pension benefit plans" or both. Id. at 113. See 29 U.S.C. § 1002(3). An employee welfare benefit plan, which is at issue here, in turn, is defined as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

Although the Act does not indicate exactly what constitutes a "plan, fund, or program," the regulations promulgated by the Secretary of Labor regarding employee welfare benefit plans tell us what they are not. See 29 C.F.R. § 2510.3-

1(a)(1).[16]  Relevant to this case, under the heading "Payroll practices," the regulations provide:

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include--
>
> (2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment)

29 C.F.R. 2510.3-1(b)(2).  Medco argues that because the STD benefits constitute plaintiff's normal compensation and are paid out of its general assets rather than a fund, the program is exempt from ERISA's coverage under the "payroll practices" exemption.

To support its position, Medco relies principally on Stern v. International Business Machines, 326 F.3d 1367 (11th Cir. 2003)("Stern"), in which the plaintiff, like the instant plaintiff, received program benefits from his employer for a period of time after he injured himself and was unable to work. His employer subsequently discontinued paying the benefits and the plaintiff brought suit in state court against his employer for breaching their employment contract.  The employer removed

---

[16]As noted by the United States Supreme Court in Massachusetts v. Morash, 490 U.S. at 116, the Secretary is specifically authorized to define ERISA's accounting, technical and trade terms and, thus, deference is properly given to the Secretary's "reasonable views." Id., citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843 (1984).

8

the case to federal court arguing that the plan at issue constituted a welfare benefit plan under ERISA which preempted the plaintiff's state law claim. The plaintiff filed a motion to remand which the district court denied.

On appeal, the Court of Appeals for the Eleventh Circuit reversed finding that the program at issue constituted a payroll practice exempted from ERISA under 29 C.F.R. § 2510.3-1(b)(2) and, thus, the doctrine of complete preemption was inapplicable and the court was without federal question jurisdiction. Id. at 1370, 1374. Specifically, the Court found that the program, like that at issue here, fit within the express terms of the "payroll practice" regulation as, "[i]t pays out of IBM's general assets an employee's normal compensation during periods when the employee is physically or mentally unable to work." Id. at 1371. In so finding, the Court relied on several Department of Labor Advisory Opinions and, as the Court put it, "[e]very decision to interpret the payroll practices regulation since *Morash*," all of which the Court found supported the application of § 2510.3-1(b) to IBM's Plan. Id. at 1371-72.

Here, Medco's STD Program, like IBM's program in Stern, pays out of Medco's general assets an employee's normal compensation during periods when the employee is physically or mentally unable to work. It therefore appears that, under Stern,

Medco's program is exempt from ERISA under the "payroll practices" exclusion.

Medco has also cited to a number of other cases (published and unpublished) decided in various jurisdictions as well as a series of opinion letters issued by the Secretary of Labor in which, without exception, it has been concluded that plans such as Medco's STD program -- i.e, where it provides for payment of no more than normal compensation and is paid out of the employer's general assets -- fall under the "payroll practices" exemption and are not governed by ERISA.[17]  See Funkhouser v. Wells Fargo Bank, N.A., 289 F.3d 1137, 1142 (9th Cir. 2002)(Finding that the employer's sick and vacation policies fell within the definition of ERISA's "payroll practices" exclusion where they paid an employees' normal salary and were funded by the employer's general assets.); Alaska Airlines, Inc. v. Oregon Bureau of Labor, 122 F.3d 812, 814 (9th Cir. 1997)(Finding that employer's sick leave payments which are "normal compensation" and paid out of employer's general assets qualify as a payroll practice under the regulation.); Shea v. Wells Fargo Armored Service Corp., 810 F.2d 372, 376 (2nd Cir. 1987)(Finding that employer's sick leave and vacation practices

---

[17] Although the Court recognizes that the cases cited by Medco have no precedential value and/or are not binding on this Court, they are directly on point and, thus, offer considerable guidance on the issue. Similarly, as found by the Court of Appeals for the Eleventh Circuit, while the Secretary's opinion letters are not binding either, "the views of the agency entrusted with interpreting and enforcing ERISA carry considerable weight." Stern v. IBM, 326 F.3d at 1372.

fell within "payroll practices" provision because they were paid out of employer's general assets at employee's normal rate of compensation.); Capriccioso v. Henry Ford Health Systems, 2000 WL 1033030 *2 (6th Cir. July 17, 2000)(Finding that because the employer pays salary continuation benefits out of its general assets it is not subject to ERISA since it constitutes a "payroll practice."); Hart v. Reynolds & Reynolds Co., 1993 WL 243797 *3 (6th Cir. July 6, 1993)(Disability benefits which were paid as normal compensation from company's general assets was a payroll practice and not an employee welfare benefit plan under ERISA.); Kozlowski v. Penn National Ins., 2005 WL 1163148 *1 n.1 (M.D. Pa. May 17, 2005)(Granting summary judgment on employee's ERISA claim alleging wrongful denial of benefits where salary continuation plan at issue was paid out of employer's general assets.); Havey v. Tenneco, Inc., 2000 WL 198445 *8 (N.D. Ill. February 10, 2000)(Summary Judgment granted in favor of employer under "payroll practice" exception where employee could not demonstrate that benefits were not paid out of employer's general assets.); Difederico v. Rolm Co., 1995 WL 710561 *2 (E.D. Pa. November 30, 1995)(Finding that sickness and accident plan paid as normal compensation from employer's general assets was a payroll practice exempt from ERISA's purview.); Letter from Dept. of Labor to SunOlin Chemical Company, Op. 79-69 A, 1979 WL 7006 (Sept. 25, 1979) (A salary continuance program which "provides

11

for the payment of no more than normal compensation [out of the employer's general assets] for periods of time that an employee is absent for medical reasons, is a payroll practice. . . . [and] not an employee welfare benefit plan under ERISA."); Letter from Dept. of Labor to Simmons Company, Op. 92-18A, 1992 WL 328699 (Sept. 30, 1992) (STD program that provides weekly income to employees unable to perform their jobs "due to illness, injury, or accident," where benefits paid "vary depending upon the employee's length of service" and are "paid solely by the employer of its general assets," is not "an employee welfare benefit plan within the meaning of section 3(1) of Title I of ERISA and would not be covered by that Title."); Letter from Dept. of Labor to AAA Michigan, Op. 93-02A, 1993 WL 68525 (Jan. 12, 1993)(STD program administered by third-party administrator, which allow qualified employee to continue to receive less than normal compensation during periods in which the "employee is absent for medical reasons," where program's benefits are "paid exclusively from the general assets of the employer," constitutes "a payroll practice within the meaning of regulation section 2510.3-1(b)."); Letter from Dept. of Labor to Coca-Cola Company, Op. 93-20A, 1993 WL 323133 (July 16, 1993)(STD program constitutes payroll practice and is exempt from ERISA because it allows qualified injured/sick employees to continue to receive no more than their normal compensation, and benefits under plan are

12

paid out of employer's general assets); Letter from Dept. of Labor to Toyota Motor Manufacturing, U.S.A., Inc., Op. 93-27A, 1993 WL 421012 (Oct. 12, 1993)(same); and Letter from Dept. of Labor to Parisian, Inc., Op. 94-40A, 1994 WL 694827 (Dec. 7, 1994)(same).[18]

      Curiously plaintiff has not cited to any contrary authority or discussed any of the authority cited by Medco. Indeed, plaintiff has not addressed the "payroll practice" exception at all. Rather, plaintiff simply argues that Medco's STD plan qualifies as an ERISA plan because it meets the definition of an employee welfare benefit plan as set forth in 29 U.S.C. § 1002(1) which, as previously discussed, is defined in the statute as a plan, fund, or program that is established or maintained by an employer for the purpose of providing benefits to its participants or beneficiaries. 29 U.S.C. § 1002(1). To support a finding that an ERISA plan, fund or program exists, which is the only factor at issue here, plaintiff cites to <u>Keenan v. Unum Provident Corp.</u>, 252 F. Supp. 2d 163, 165-66 (E.D. Pa. 2003), and <u>Stone v. Disability Management Services, Inc.</u>, 288 F. Supp. 2d 684, 686-87 (M.D. Pa. 2003). The plans at issue in these cases, however, were funded by insurance companies and not paid from the employer's general assets. Thus, the "payroll

---

[18]All of the unpublished opinions and opinion letters have been submitted by Medco through the Affidavit of John J. Peirano and appear at Docket No. 25.

practices" exception was not at issue and neither the Keenan Court nor the Court in Stone was called upon to address it. As such, neither of these case provides the basis for finding the "payroll practice" exclusion is inapplicable in this case or for finding that Medco's STD program is governed by ERISA.

Moreover, as previously discussed, plaintiff has acknowledged that Medco's STD program is a "salary continuance program" which allows an employee to continue to receive all or a portion of his or her normal salary during absences due to medical reasons and that payments are made from Medco's general assets rather than from a fund. These circumstances are precisely those contemplated by the "payroll practices" exclusion promulgated by the Secretary of Labor and, thus, plaintiff has seemingly conceded that Medco's STD program falls under the "payroll practices" exemption. See 29 C.F.R. § 2510.3-1(b)(2). It therefore follows that the STD program is not governed by ERISA and that plaintiff is unable to succeed on her claim for relief.[19]

---

[19] We note here that for reasons that are not at all clear, rather than address the "payroll practices" exception raised by Medco, plaintiff argues that because the "Certain group or group-type insurance programs" exception found in 29 C.F.R. § 2510.3-1(2)(j), is inapplicable to the facts of this case, Medco's STD plan is not insulated from ERISA's reach. Medco, however, has not invoked the "Certain group or group-type insurance programs" exemption and, as it points out, could not do so because the program is not funded by an insurance company and is not a "group or group-type insurance program." See 29 C.F.R. § 2510.3-1(2)(j). The fact that the "Certain group or group-type insurance programs" exemption does not apply here, however, does not mean that the "Payroll practices" exemption is inapplicable as well. Thus, plaintiff's argument does not provide the

For these reasons, it is recommended that the motion for summary judgment submitted on behalf of defendants (Docket No. 21) be granted, and that the motion for summary judgment submitted on behalf of plaintiff (Docket No. 28) be dismissed as moot.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                        Respectfully submitted,

                                        /s/ Amy Reynolds Hay
                                        AMY REYNOLDS HAY
                                        United States Magistrate Judge


Dated:    30 January, 2006


cc:   John E. Quinn, Esquire
      Evans, Portnoy & Quinn
      301 Grant Street
      36th Floor, One Oxford Centre
      Pittsburgh, PA 15219-6401

      Jonathan Dryer, Esquire
      Salvatore A. Clemente, Esquire
      Wilson, Elser, Moskowitz,

---

basis for finding that Medco's STD plan is governed by ERISA or that a genuine issue exists for trial.

```
   Edelman & Dicker LLP
The Curtis Center, Suite 1130 East
Independence Square West
Philadelphia, PA 19106

William James Rogers, Esquire
Thomson, Rhodes & Cowie
1010 Two Chatham Center
Pittsburgh, PA 15219

John J. Peirano, Esquire
Paula M. Castaldo, Esquire
McElroy, Deutsch, Mulvaney & Carpenter
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
```